**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION,

      Plaintiff,

v.                          Civil Action No.: 2:25cv523-JKW-RJK

VIRGINIA PORT AUTHORITY, *et al.,*

      Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT**
**TO FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 12(b)(7)**

      Plaintiff, the International Longshoremen's Association (the "ILA"), attempts to thread together claims that do not and cannot rise to the level of actionable relief. First and foremost, both the Virginia Port Authority ("VPA") and Stephen Edwards ("Edwards") (collectively, the "Defendants") are protected by sovereign immunity. The Complaint does not allege how its claims can overcome this threshold issue. In addition to ignoring the realities of sovereign immunity, the Complaint fails to establish this Court's subject matter jurisdiction or to state a claim upon which relief may be granted. The Complaint is nothing more than a misguided attempt to seek an advisory opinion without including the actual party to a labor contract alleged to be in breach and without pleading an actual controversy that is ripe for adjudication. For the foregoing reasons, as outlined in further detail below, the Complaint should be dismissed with prejudice.

**BACKGROUND**

      The ILA brings this case against VPA and Edwards. The Complaint begins by alleging the roles of the VPA, Virginia International Terminals, LLC ("VIT"), the ILA, and the United States

Maritime Alliance Ltd. ("USMX") in the operations and negotiations for the Port of Virginia. (*See* Dkt. No. 1, ¶¶ 7–24.) The Complaint further discusses a collective bargaining agreement, which was negotiated to cover the period of October 1, 2024 to September 30, 2030 (the "Master Contract"). (*Id.* ¶¶ 21–35.) Although the Complaint alleges contentious items of negotiation,[1] it recognizes that the Master Contract was ratified and signed by the parties on March 11, 2025, rendering any contentious negotiations prior to that date moot. (*See id.* 26–31.) Further, although the ILA purports to cite provisions of the Master Contract, it inexplicably fails to include a copy of the Master Contract as an exhibit to its Complaint. (*See id.* ¶¶ 32–35.)

Notably, the ILA admits that the VPA is not a party to the Master Contract. (*Id.* ¶ 24.) Even still, the apparent crux of their argument against the VPA and Edwards is an alleged breach of the Master Contract. While the ILA generally asserts that "upon information and belief, it is Defendants VPA and Edwards that are directing VIT to violate the terms of the Master Contract by implementing new technology without following the procedures that VIT is contractually-obligated to follow," it only cites one alleged instance of such conduct. (*See id.* ¶¶ 37–43.)

The single example alleged is a dispute over VPA's procurement of rail-mounted gantry cranes ("RMGs") at the North Berth of Norfolk International Terminal, a facility owned by the VPA and operated by VIT. (*Id.* ¶¶ 38–41.) The only specifics provided related to this example are allegations that in April 2025 members of the ILA local unions "observed" the RMGs being "set up" and "installed" allegedly "without any prior notice to the ILA." (*Id.* ¶ 38.) The ILA does not allege facts as to when the RMGs were purchased or that the RMGs at issue are currently in use.

---

[1] Given that a court evaluating a Motion to Dismiss construes the facts pled in the Complaint in the light most favorable to the Plaintiff, Defendants present their arguments herein without admitting the facts alleged in the Complaint. Defendants maintain the right to contest the facts as alleged in the Complaint on a future date.

Further, while the ILA acknowledges that one of VPA's duties is to procure equipment for facilities it owns, leases, or operates, it claims that the Defendants have somehow interfered with the ILA's rights in the "Master Contract" by purchasing equipment for the Port. (*See id.* ¶¶ 8, 38–39, 43.) Finally, the ILA makes the conclusory statement that the VPA is "inserting itself into" and "interfer[ing]" in a "private-sector collective bargaining relationship" without identifying how such allegations give rise to any sort of cause of action. (*Id.* ¶ 42.)

With these factual allegations as their foundation, the ILA brings two counts against Defendants. Count I of the Complaint relies on federal preemption under the theory that VPA and Edwards have infringed on the ILA's rights under the National Labor Relations Act ("NLRA") 29 U.S.C. § 151, *et seq.* by performing the VPA's statutory duties under Va. Code §§ 62.1-132.3 and 62.1-132.18, *i.e.*, procuring the RMGs for the operation of Norfolk International Terminals. (Dkt. No. 1 at 9–11.) Count II assumes recovery in Count I and claims that a permanent injunction is appropriate to enjoin Defendants from infringing on the ILA's collective bargaining rights as outlined in the Master Contract. (*Id.* at 11–12.) Based on these two counts, the ILA seeks incredibly broad relief which extends beyond the dispute regarding the cranes, extending the request to "any interference with collective bargaining or the administration of the Master Contract." (*Id.* at 12, ¶ B.)

As outlined in more detail below, the ILA's vague and conclusory claims against a political subdivision and its official, without stating a sufficient cause of action warranting relief, cannot stand under federal law. The Complaint should therefore be dismissed.

## LEGAL STANDARDS

I.  Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter

jurisdiction over a case. Fed. R. Civ. P. 12(b)(1). A challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

II.    Rule 12(b)(6) of the Federal Rules of Civil Procedure

A motion to dismiss filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). If the facts alleged in the complaint, taken as true, fail to state a claim upon which relief can be granted, the Court should dismiss the complaint. *Id.* The United States Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A 12(b)(6) motion should be granted unless an adequately stated claim is 'supported by showing any set of facts consistent with the allegations in the complaint.'" *Honua Securities Corp., Inc. v. SMI Hyundai Corp.*, No. 1:10cv785, 2010 WL 11565898, at *3 (E.D. Va. Oct. 21, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555). "A complaint is also insufficient if it relies upon 'naked assertions devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

4

III. Rule 12(b)(7) of the Federal Rules of Civil Procedure

Under Rule 12(b)(7), a party may move to dismiss a suit for "failure to join a party under Rule 19." Rule 19 sets out a two-step inquiry for courts to determine whether a party is "necessary" and "indispensable" to the litigation. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020). The first question under Rule 19(a) is "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (citing *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999)). Second, "[i]f the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). "Neither prong of Rule 19 is to be applied merely as a 'procedural formula.'" *McKiver*, 980 F.3d at 951 (quoting *Hanna*, 750 F.3d at 433). Instead, the "[d]ecisions must be made pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." *Hanna*, 750 F.3d at 433 (internal citations omitted). The moving party has the burden of showing that the absent party is necessary under Rule 19. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

## ARGUMENT

I. Under Rule 12(b)(1) and 12(b)(6), the ILA's claims are barred by sovereign immunity.

The Eleventh Amendment of the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In addition to the state itself, "Eleventh Amendment Sovereign Immunity also applies to state agencies, agents, and instrumentalities that act as an arm of the state." *Kapoor*

*v. Western State Hosp. Employee & Director*, No. 5:21-cv-00076, 2022 WL 4396279, at *3 (W.D. Va. Sept. 23, 2022) (citing *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429–30 (1997)). Accordingly, under the doctrine of sovereign immunity, a state agency may not be sued under federal law in a federal court without the "unequivocally expressed" consent of the state, regardless of the nature of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–106 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)).

Courts have identified three main exceptions to state sovereign immunity. *See Kapoor*, 2022 WL 4396279, at *3. "First, Congress may expressly abrogate a state's sovereign immunity for certain types of cases via statute in the exercise of its power to enforce the Fourteenth Amendment— an amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976)). "Second, a state may waive its sovereign immunity by consenting to suit. *Id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883)). "Finally, an exception recognized in *Ex parte Young*, 209 U.S. 123 (1908), allows private citizens, in proper cases, to seek injunctive relief against state officials in their official capacities to enjoin them from engaging in future conduct that would violate the Constitution or a federal statute." *Id.* (citing *Ex parte Young*, 209 U.S. at 159).

**A. Sovereign immunity bars the claims against the VPA.**

It is undisputed that VPA is a "public instrumentality of the Commonwealth of Virginia." (Dkt. No. 1 ¶¶ 2, 46 ("Defendant VPA is an instrumentality of the Commonwealth of Virginia.").) As such, the VPA is entitled to sovereign immunity. The ILA cites no exception to the Eleventh Amendment nor can any of the exceptions be said to apply here. *See Kapoor*, 2022 WL 4396279, at

6

*3–4. The VPA has not consented to suit and there is no allegation that the ILA intends to bring this cause of action under any statutory scheme for which Congress has expressly abrogated the state's sovereign immunity. *See id.* Finally, the *Ex parte Young* exception applies to state officials only, and is therefore inapplicable to the VPA as a political subdivision. Accordingly, without any applicable exception, the Eleventh Amendment bars the ILA's claims against the VPA, and the claims should be dismissed, with prejudice.

## B.   The ILA fails to state a claim to overcome Edwards's sovereign immunity.

"[W]hen the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02. *Ex parte Young* is an exception to the immunity of state officials, but it is only applicable when the official has a connection to enforcement of the act and the requested relief is prospective. (*See infra* § I(2)(a)–(b).) To the extent that the ILA is somehow intending to invoke *Ex parte Young* doctrine for its claims against Edwards (which Defendants do not concede that it does), its claims fail on both fronts.

### 1.   *The Complaint does not allege a connection between Edwards and enforcement.*

The *Ex parte Young* exception to sovereign immunity of state actors also requires that the individual being sued in their official capacity have "some connection with the enforcement of the act." *Nansemond Indian Nation v. Virginia*, No. 2:25-cv-195, 2025 WL 2320358, at *5 (E.D. Va. Aug. 8, 2025) (quoting *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021); *Ex parte Young*, 209 U.S. 123, 157 (1908)). This requires that there be a "'special relation' between the state officer sued and the challenged" action "which provides the officer with the authority to enforce the particular law at issue." *Id.* (quoting *Doyle*, 1 F.4th at 254; *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001)). "Without this enforcement duty, the officer is merely 'a representative of the

State' who cannot be sued because allowing such a suit would essentially 'make the State a party.'" *Id.* (quoting *Doyle*, 1 F.4th at 254; *Ex parte Young*, 209 U.S. at 157); *see also Perry-Bey v. Virginia*, No. 3:12cv704, 2013 WL 2476491, at *6 (E.D. Va. June 7, 2013) (quoting *Ex parte Young*, 209 U.S. at 157) ("However, the state 'officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'"). Notably, this Court has acknowledged recently that an allegation that an individual that "has general supervisory authority over [a state] agency merely by virtue of being [a state actor], is insufficient." *Nansemond*, 2025 WL 2320358, at *6.

This special relation analysis is applicable to the facts pled in this case. The ILA attempts to lump claims against the VPA and Edwards together, in an apparent attempt to circumvent sovereign immunity. In doing so, the ILA does not allege a special relation on the part of Edwards beyond those acts apparently being taken by the VPA itself. (*See* Dkt. No. 1, ¶¶ 37, 47–50.) The ILA otherwise simply references Edwards's broad responsibility, (*Id.* ¶ 3.)—in other words, "supervisory authority" akin to the situation in *Nansemond*.

The ILA does not bring any claims specific to Edwards himself. The allegations in the Complaint include no more than allegations of Edwards acting in a broad supervisory role as a leader of the VPA. Accordingly, Edwards is entitled to sovereign immunity protection, and the claims against him should be dismissed pursuant to Rule 12(b)(6).

> 2. *The relief sought by the ILA is not prospective.*

Even if the ILA had sufficiently alleged Edwards's connection to enforcement—which it has not—much of the relief sought by the ILA is not prospective injunctive relief. "Under *Ex Parte Young*, sovereign immunity under the Eleventh Amendment does not extend to suits against state officials seeking prospective injunctive or declaratory relief designed to correct an ongoing violation

of federal law." *Parikh v. Brown*, No. 23-1111, 2024 WL 2764720, at *1 (4th Cir. May 30, 2024) (citing *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2021)); *see also Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 945 (E.D. Mich. 2025) ("In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an *ongoing violation* of federal law and seeks relief properly characterized as *prospective*.") The exception does not apply, however, "when the alleged violation of federal law occurred entirely in the past." *Parikh*, 2024 WL 2764720, at *1 (citing *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018)). Failure to allege an "ongoing violation of federal law" is fatal to a plaintiff's attempted invocation of the *Ex parte Young* exception to Eleventh Amendment sovereign immunity because "a plaintiff must allege a sufficiently 'imminent and particularized' threat that the state-official defendants will enforce the challenged state policy or statute against Plaintiffs in the future." *Satkowiak*, 771 F. Supp. 3d at 946. Claims for retroactive relief remain barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102–03.

The ILA seeks to address something that has allegedly already happened, *i.e.*, the alleged purchase of new equipment with "new technology." (Dkt. No. 1 ¶ 43.) The ILA further seeks a declaration that "Defendants' attempt to frustrate and to interfere with the collective bargaining process between the ILA and VIT is preempted by federal labor law." (*Id.* at 12 ¶ A.) This request is therefore not prospective but rather seeks a declaration that the alleged past act of Defendants is preempted. The ILA's general request for an injunction to prohibit Edwards from interfering with grievance and dispute resolution procedures in the Master Contract contains neither the requisite specificity nor the actual expectancy required to overcome Edwards's sovereign immunity. (*Id.* at 12 ¶¶ B, C.) Put simply, the ILA's lawsuit complains about purchase of equipment that has already

happened.

VPA and Edwards are both protected by sovereign immunity against the claims raised by the ILA, so the claims against them should be dismissed with prejudice in their entirety pursuant to Rules 12(b)(1) and 12(b)(6).

II.  Under Rule 12(b)(1), this Court also lacks subject matter jurisdiction to hear the case.

Even setting sovereign immunity aside and looking at the plain allegations in the Complaint, this Court lacks subject matter jurisdiction to hear the case. For this court to have subject matter jurisdiction over this case, there must be an actual controversy, rather than a request for an advisory opinion. *See Potter v. Davis*, No. 2:15cv266, 2015 WL 5247709, at *2 (E.D. Va. Sept. 8, 2015). The plaintiff also must have standing, which requires that plaintiff allege a particularized injury, rather than one that is "conjectural or hypothetical." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 629 (E.D. Va. 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). Further, even when an actual controversy and particularized injury have been pled, a claim may not proceed if it is not ripe for adjudication. *See Nationwide Ins. Co. of Am. v. Seward*, No. 2:22-cv-316, 2024 WL 1889831, at *1 (E.D. Va. Apr. 30, 2024) (citing *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quotation marks and citations omitted)). The ILA's claims fail on all three fronts.

**A.  The Complaint presents no actual controversy between the ILA and Defendants.**

Article III of the Constitution of the United States confines federal courts to adjudicating actual "cases" and "controversies." The Declaratory Judgment Act similarly provides that federal courts may only issue declaratory judgments in cases of "actual controvers[ies]." *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 787 (E.D. Va. 1997) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). "If no actual controversy exists, the court lacks subject matter jurisdiction to consider the claim." *Potter*, 2015 WL 5247709, at *2. This is because "[a] declaratory judgment may not be given for a purely hypothetical situation [or as] . . . an advisory opinion." *Id.*

(quoting *A.S. Abell Co. v. Chell*, 412 F.2d 712, 719 (4th Cir. 1969)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 188, 127 (2007); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The plaintiff bears the burden of establishing that an actual controversy exists between the parties at the time of filing the suit. *CAE Screenplates, Inc.*, 957 F. Supp. at 788. The ILA cannot satisfy this burden.

Here, the ILA's claims rely exclusively on cherry-picked contents of the Master Contract and an erroneous legal conclusion that VIT—a non-party to this suit—is in breach. (*See, e.g.,* Dkt. No. 1, ¶ 43 ("VPA is purchasing new technology for VIT so that VIT can avoid its contractual obligations to bargain about the purchase and implementation of new technology. This situation causes VIT to violate its obligations under the Master Contract.").) By the ILA's own allegations, the VPA is not a party to the Master Contract. (Dkt. No 1, ¶ 24 ("VPA is not and, according to Section 40.1-57.2 of the Virginia Code, cannot be a signatory to the Master Contract.").) As alleged by the ILA, the controversy is between the ILA and VIT, yet the ILA has filed suit only against VPA and Edwards.[2]

Resolving the dispute on the merits—if the Court were to get that far given the legal insufficiencies of the Complaint—first would require the conclusion that VIT is in breach of the Master Contract—an issue which has not yet been litigated or resolved. Only upon a finding of breach would it be appropriate to evaluate the specific allegations against the Defendants to

---

[2] For reasons discussed in more detail *infra* § IV, if this case is not dismissed otherwise, it cannot be adjudicated without VIT.

determine whether relief is appropriate. Because VIT's alleged breach is purely conclusory, there is no actual controversy alleged in the Complaint against the Defendants. There must be a concrete dispute for the Court to issue a declaratory judgment under the Declaratory Judgment Act. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."). No concrete dispute between the ILA and VPA exists here, and the case should be dismissed with prejudice for lack of subject matter jurisdiction.

**B. The ILA lacks standing for failure to state an actual, particularized injury.**

In addition to the lack of controversy, the ILA has not alleged any purported harm, let alone the particularized harm necessary for it to have standing in this case. Article III standing requires an injury in fact. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), for the proposition that a plaintiff must show an injury in fact that is "actual or imminent, not conjectural or hypothetical"). And, to seek injunctive relief, Plaintiff must show "a real or immediate threat that [she] will be wronged again." *Doe v. Liberty Univ., Inc.*, 635 F. Supp. 3d 447, 454 (W.D. Va. 2022) (citations omitted).

The only portion of the Complaint in which any harm is mentioned is in Count II relating to permanent injunction. This reference, however, is just a general and conclusory allegation that the ILA will be "immediately and irreparably harmed without the entry of a permanent injunction enjoining Defendant Virginia Port Authority from interfering with the Master Contract." (Dkt. No. 1, ¶ 56.) Nowhere in the Complaint does the ILA state the nature of any supposed harm. This is fatal. *See, e.g.*, *Whitman v. Social Security Administration*, No. 1:24-cv-1376-PTG-WEF, 2025 WL 1357428, at *5 (E.D. Va. April 1, 2025) ("Regarding standing to seek declaratory and injunctive

relief, Plaintiff 'must establish an ongoing or future injury in fact.'") (quoting *Kenny v. Wilson*, 885 F.3d 280, 287–88 (4th Cir. 2018)). The ILA does not even allege that the RMGs are in use, that the union is being forced to work in violation of the Master Contract, or that it has been financially harmed. The absence of particulars is telling. In the absence of an alleged injury, there is no standing to bring a claim and the case should be dismissed with prejudice for lack of subject matter jurisdiction.

### C. The alleged dispute is not ripe because it alleges a breach of contract based on improper implementation of equipment that has merely been purchased, not implemented.

Further, the Complaint improperly relies on future, potential conduct of third parties. As this Court has noted, "[a] claim is not ripe when 'the plaintiff has not yet suffered injury and any future impact remains wholly speculative,' or when 'an injury is contingent upon a decision to be made by a third party that has not yet acted.'" *Id*. at *1 (quoting *Doe v. Va. Dep't of State Police*, 713 F. 3d 745, 758 (4th Cir. 2013)). This Court has held that it does not rule on a "hypothetical state of facts." *Id.* at *5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation marks and citation omitted)).

Not only is the entirety of the Master Contract—on which the ILA purportedly bases its claim—missing from the Complaint, what is included reinforces the speculative nature of the Complaint as well. The Master Contract purportedly deals with the "implementation" of new technology (Dkt. No. 1, ¶ 35), yet the Complaint fails to allege that that RMGs—the alleged "new technology"—are currently in use. (*See* Dkt. No. 1.)

Rather, the Complaint is focused on the mere exercise of VPA's statutory duties to purchase such equipment. Any supposed breach of the Master Contract would be contingent on future events by third parties, namely whether or not sufficient negotiations occur between the ILA and VIT under

the Master Contract before the RMGs are actually put into use or "implemented." Thus, even if a claim could be alleged against VPA and/or Edwards based on the Master Contract, it is unripe and should be dismissed.

**D.  Delaying judicial review will not cause undue hardship.**

When assessing ripeness, the Court must balance the matter's fitness for judicial review against the "hardship to the parties" and "the cost" of "delaying judicial review." *Miller v. Brown,* 462 F.3d 312, 319 (4th Cir. 2006) (quotation marks and citations omitted). Any hardship must be "measured by the immediacy of the threat." *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992) (citation omitted). For example, when a plaintiff's "injuries become worse each day decision is delayed," that presents an undue hardship. *Miller*, 462 F.3d at 321 (citing *Reg'l Rail Reorganization Cases*, 419 U.S. 102, 123–24 (1974)).

That is not so here. The cranes are not alleged to be in use, so there is no immediate threat or harm to the ILA. This factor, too, weighs against a finding that the ILA's claims are ripe. *Charter Fed. Sav. Bank*, 976 F.2d at 209 (citation omitted). The ILA bears the burden of establishing that its claims are ripe *now. See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotations and citation omitted). On this, the ILA has fallen short.

Because any dispute regarding ILA's preemption and permanent injunction claims are not ripe, this matter does not present a "case" or "controversy" within the meaning of Article III. Thus, the Court lacks subject-matter jurisdiction over the action, and dismissal is required. *See Jones v. Calvert Grp. Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cnty., Tx. v. Davis*, 139 S. Ct. 1843 (2019).

**E.  Even if the Court believes it <u>might</u> have jurisdiction, the Court should exercise its discretion to decline to hear this matter under the Declaratory Judgment Act because of the jurisdictional concerns.**

This case is not justiciable under Article III, but even if it were, the Court should decline to exercise its jurisdiction. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Declaratory judgment actions are unique in this regard. *Id.* ("The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.").

"[C]ourts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019). When there are legitimate questions raised about the Court's jurisdiction, declining to hear the case under the Declaratory Judgment Act is proper. *See*, *e.g.*, *Artful Color, Inc. v. Hale*, 928 F. Supp. 2d 859, 863 (E.D.N.C. 2013) (exercising discretion not to consider a declaratory judgment when "personal jurisdiction over defendant is unclear."); *Phoenix Ins. Co. v. Kellner*, No. 11-1085, 2012 WL 266470, at *3–4 (W.D. Pa. Jan. 30, 2012) ("Another factor weighing in favor of declining jurisdiction, is that there are dubious constitutional bases for the exercise of jurisdiction in this case . . . [T]he court's significant reservations regarding the ripeness of issues presented is an additional factor counseling in favor of declining jurisdiction as a discretionary matter.").

Given the speculative nature of the claims and the conclusory allegations in the Complaint, exercising jurisdiction here would serve no useful purpose and would only be improperly advising on a "hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Therefore, the Court also has grounds to dismiss this claim pursuant to its discretion under the Declaratory Judgment Act.

III. <u>Under Rule 12(b)(6), the Complaint should be dismissed in full because it fails to state a claim.</u>

No claim has been stated against the VPA or Edwards. Plaintiff has the burden of alleging factual allegations that make his claim plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570); *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011)).

**A. The ILA fails to state a claim because there is no private right of action under the NLRA for the ILA to bring a claim against VPA or Edwards.**

At the outset, the ILA does not make clear under what authority it brings its Complaint. The ILA references preemption, but it does not identify any authority for bringing a claim on the basis of preemption alone. At best, the ILA appears to attempt to bring a claim against the Defendants in federal court for a purported violation of the NLRA but sets forth no provision that was purportedly violated and cites no grounds for a private right of action to bring an action in federal court. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."). Aside from the fact that there is no private right of action, there is no substantive basis under the NLRA for this claim either. The NLRA has no section that addresses liability of third parties who are not acting as an employer or a labor union. Without allegations of a specific provision violated or grounds for a private right of action to bring this matter in federal court, all claims should be dismissed with prejudice.

Here, the ILA brings claims against the VPA and its director, Edwards, for allegedly interfering in a labor negotiation between ILA and VIT. It admits that the VPA is not an employer. (Dkt. No. 1, ¶ 19 ("VPA is not an 'employer' as that term is defined by the NLRA because it is an

instrumentality of the Commonwealth of Virginia."), ¶ 24.) In fact, as a political subdivision, VPA *cannot* be an employer under the NLRA. 29 U.S.C. § 152(2) (excluding a state or political subdivision from the definition of "employer"); *Fenner v. Mayor & City Council of Baltimore*, No. DLB-21-2646, 2022 WL 2209064, *4-5 (D. Md. June 21, 2022). The VPA certainly is not a labor union, and Edwards is merely an official with the VPA, not an employer or labor union. (Dkt. No. 1, ¶ 3.) Third parties not directly involved in a labor dispute are not governed by the NLRA. *Fenner*, 2022 WL 2209064, at *4–5.

Without any authority cited by the ILA regarding the bases for its claims, the ILA fails to state a claim upon which relief can be granted. At the very least, the ILA needs to identify the mechanism or statute by which it brings this cause of action rather than a general reference to the NLRA. Without such an allegation in the Complaint, Defendants are not given "fair notice of what the . . . claim is and the grounds upon which it rests" to respond. *See Walsh v. Eagle Landing Homeowners Ass'n*, No. 3:16cv559, 2017 WL 11571463, at *1 n.1 (E.D. Va. Nov. 3, 2017) (quoting *Twombly*, 550 U.S. at 555; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Defendants therefore respectfully request that this Court dismiss the ILA's complaint with prejudice.

**B. The ILA fails to assert a claim for preemption.**

Even if the ILA had stated a basis for bringing a lawsuit against the VPA and Edwards on the basis of preemption alone, the ILA fails to state a claim that Va. Code 62.1-128, *et seq.*, is preempted by the NLRA pursuant to Article VI, Clause 2, of the Constitution of the United States (the "Supremacy Clause"). "Although the NLRA itself contains no express preemption provisions, the Supreme Court consistently has held that Congress implicitly mandated two types of preemption as necessary to implement federal labor policy." *Smithfield Foods, Inc. v. United Food & Comm. Workers Int'l Union*, 585 F. Supp. 2d 789, 812 (E.D. Va. 2008). "These well-established preemption

doctrines have come to be known as 'Garmon preemption' [(from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959))] and 'Machinists preemption'" (from *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976)). *Id.* Neither of them justify preemption of VPA's alleged action in this case.

*Garmon* preemption is "intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA." *Id.* (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)). "To this end, *Garmon* preemption forbids States from 'regulat[ing] activity that NLRA protects, prohibits, or arguably protects or prohibits.'" *Id.* (quoting *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986)). "*Garmon* pre-emption involves balancing the State's interest in controlling or remedying the effects of the conduct in question against the interference with the Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 n.26 (1985) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–99 (1983)). "*Garmon* pre-emption accomplishes Congress' purpose of creating an administrative agency in charge of creating detailed rules to implement the Act, rather than having the Act enforced and interpreted by the state or federal courts." *Id.*

*Machinists* preemption "forbids both the NLRB and States from regulating conduct that Congress intended 'to be controlled by the free play of economic forces.'" *Smithfield Foods, Inc.*, 585 F. Supp. 2d at 812 (quoting *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976)). "In *Machinists*, the Supreme Court held that Wisconsin Employment Relations Commission could not designate as an unfair labor practice a concerted refusal by a union and its members to work overtime because Congress did not intend for such activity to be regulated by the

States." *Id.* The Supreme Court held that there was "simply no question that the [NLRA]'s processes would be frustrated in the instant case were the State's [action] permitted." *Id.* (quoting *Machinists*, 427 U.S. at 148). The Court further found that it was "clear beyond question that Wisconsin [entered] into the substantive aspects of the bargaining process to the extent that Congress has not countenanced." *Id.* (quoting *Machinists*, 427 U.S. at 148). Based on this analysis, "*Machinists* preemption is based on the principle that it would frustrate Congress's intent to regulate economic pressure which was desirably left unregulated by the federal labor laws." *Id.*

When the Supreme Court states that the NLRA pre-empts state law, it means "that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, see *Machinists*, or for NLRB jurisdiction, see *Garmon*." *Bldg. & Const. Trades v. Association of Builders* (hereinafter, *Boston Harbor*), 507 U.S. 218, 226–27 (1993). "A State does not regulate, however, simply by acting within one of these protected areas." *Id.* Accordingly, the Supreme Court has consistently held that "the NLRA was intended to supplant state labor *regulation*, not all legitimate state activity that affects labor." *Id.* at 227.

In this case, the ILA cites neither form of preemption in support of its claims. Instead, it only states as follows:

> To the extent that VPA is acting in a manner that interferes with the ILA's collective bargaining rights, in a manner that forces VIT to violate its obligations under the Master Contract, or in a manner that frustrates the Master Contract's grievance and dispute resolution procedures, then Edwards' and VPA's interpretation and application of Virginia law is preempted by the NLRA.

(Dkt. No. 1, ¶ 51.) The ILA then goes on to cite language from two cases without any analysis regarding how or why the quoted language is applicable in this case. (*See id.* ¶¶ 52–53.) In fact, the ILA takes quotes from these cases out of context when they have no relevance here. *See H.K. Porter Co. v. N.L.R.B.*, 397 U.S. 99, 107–09 (1970) (holding that the NLRB can require employers and

employees to negotiate, but it cannot require either party to agree to terms); *Int'l Bhd. of Elec. Workers, Local 501 v. N.L.R.B.*, 341 U.S. 694 (1951) (analyzing the secondary boycott provision of the NLRA and the terms "induce or encourage" in the context of labor union picketing behavior). Neither case concerns alleged interference with a labor union and employer contract by a third party.

Even if the ILA had referenced a specific form of preemption, it does not allege facts to support a claim under either theory. On its face, the ILA's preemption claim cannot be based on *Garmon* preemption. As outlined above, *Garmon* preemption protects the NLRB's jurisdiction over NLRA matters by taking NLRA issues outside of the realm of state and federal courts. The ILA does not contend that the subject issue should be pending before the NLRB. Rather, it has elected to file in this Court. *Garmon* preemption therefore does not support the ILA's claim.

*Machinists* preemption is equally inapplicable. The ILA references two provisions that it claims are preempted by the NLRA. First, it cites to Va. Code § 62.1-132.3 which states:

> It shall be the duty of the Authority, on behalf of the Commonwealth, to foster and stimulate the commerce of the ports of the Commonwealth and related facilities by serving as the United states Eastern Seaboard gateway for the global import and export of freight throughout the world, to promote the shipment of freight through maritime and inland ports, to seek to secure necessary improvements of navigable tidal waters within the Commonwealth, and in general to perform any act or function that may be useful in developing, improving, or increasing the commerce, both foreign and domestic, of all maritime and inland ports of the Commonwealth and related facilities.

Second, the ILA cites to Va. Code § 62.1-132.18, which states, *inter alia*: "The Authority is authorized to acquire, construct, maintain, equip, and operate marine terminals, port facilities, wharves, docks, ships, piers, quays, elevators, compressors, refrigeration storage plants, warehouses, and other structures necessary for the convenient use of the same in the aid of commerce."

Contrary to the types of state regulation that are subject to *Machinists* preemption, these

statutory provisions are not related to the collective bargaining process or labor relations; they

simply authorize the VPA to acquire and maintain equipment for the port. These provisions do not

contest NLRA's control over labor regulation. *See Boston Harbor*, 507 U.S. 218 at 227. The ILA

cites no provision of the NLRA that preempts these statutory provisions, nor does it allege any

support for a finding that the provisions are regulating "conduct that Congress intended to be

unregulated." *See Metropolitan Life*, 471 U.S. at 149. Instead, the ILA attempts to shoehorn its

request for relief into a purported preemption claim against a government entity without sufficiently

stating a basis for its preemption claim or for any other private right of action.

Without explaining how the Virginia statutory provisions are preempted by the NLRA (or

designating which part of the NLRA purportedly preempts the Virginia Code's statement of duties

of VPA), the ILA fails to state a claim for preemption. Given that the ILA's claims for declaratory

judgment and permanent injunction are based exclusively on a general claim of preemption, for

which it has not and cannot state a claim under preemption precedent, the entirety of the Complaint

should be dismissed with prejudice.

### C. Elements for permanent injunction have not been satisfied.

Not only does the ILA's permanent injunction count fail for all of the reasons outlined above,

but the ILA completely fails to allege facts to support the elements to state a claim for permanent

injunction. "Because [a]n injunction is a drastic and extraordinary remedy which risks awarding

more relief than is merited, a plaintiff must meet a heavy burden before being granted injunctive

relief." *Saphilom v. NewRez, LLC*, No. 3:24-cv-00008, 2024 WL 3394784, at *2 (W.D. Va., June

28, 2024) (quoting *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017);

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). More specifically, "a plaintiff

seeking a permanent injunction must satisfy [the following] four-factor test before a court may grant

such relief":

> A plaintiff must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (quoting *Monsanto Co.*, 561 U.S. at 156–57; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

In order to state a claim, a plaintiff must state factual allegations in the complaint sufficient "enough to raise a right to relief above the speculative level," and the Court "need not accept as true 'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). Given these requirements, if a plaintiff attempts to bring a claim for permanent injunction but does not allege "what—if any—irreparable harm she has suffered, why remedies available at law are inadequate, or why an injunction would be in the public interest[,]" then the plaintiff has not stated a plausible claim for relief. *Id.* at *2–4.

The Complaint makes no attempt to allege facts to support a claim of irreparable injury, inadequate remedy at law, balance of hardships, or the public interest. The only reference to the four factors required for a permanent injunction are conclusory assertions in Count II that the "ILA will be successful on the merits of its preemption claims," that the "ILA will be immediately and irreparably harmed without entry of a permanent injunction," and that "[t]he ILA has no adequate remedy at law." (Dkt. No. 1, ¶¶ 55–57.) Federal courts have long held that such conclusory language, without more, is not sufficient to state a claim for relief. *See, e.g., Saphilom v. NewRez, LLC*, 2024

22

WL 3394784, at *2 (W.D. Va. June 28, 2024) (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)).

Accordingly, the ILA's claim for permanent injunction should be dismissed pursuant to Rule 12(b)(6).

> IV. <u>In the alternative, if the Court finds that subject matter jurisdiction exists and somehow a claim has been stated, the Complaint fails to add a necessary party and should be dismissed pursuant to Rule 12(b)(7).</u>

The ILA seeks this declaratory judgment action and permanent injunction without the presence of the party with whom it claims it is aggrieved—VIT. This curious decision ignores the necessity of VIT's involvement in any dispute on the merits. The ILA cannot claim, on the allegations presented in the Complaint, that VIT has no interest in this case when the crux of the case is whether VIT breached the Master Contract.

As outlined *supra*, Rule 12(b)(7) Motions to Dismiss are governed by the two-step inquiry in Rule 19. Rule 19 states, in pertinent part, as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of the subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)–(B).

Both Rule 19 factors favor the inclusion of VIT as a party. The first factor looks to whether "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). For the reasons stated above, this Court cannot determine whether the Defendants engaged in any alleged misconduct or whether the ILA is entitled to relief without first

determining whether VIT is in breach of the Master Contract. A determination of whether VIT is in breach requires VIT as a party. In *Gunvor SA v. Kayablian*, the Fourth Circuit noted that "precedent supports the proposition that a contracting party is the paradigm of an indispensable party." 948 F.3d 214, 221 (4th Cir. 2020) (citing *Nat'l Union Fire Ins. Co. v. Rite ex rel. S.C.*, 210 F.3d 246, 252 (2000) (internal quotation marks omitted)). In *National Union Fire Insurance Co.,* a parent company was a necessary party because it was a signatory to the insurance agreement and had distinct interests from its subsidiary. *Nat'l Union Fire Ins. Co.*, 210 F.3d at 251–252. So too here. The ILA brings a case that is solely reliant on the Master Contract for which the Defendants are not signatories. (*See* Dkt. No 1, ¶ 24.) VIT, by contrast, is a signatory (*id.* at ¶ 23) and has its own distinct interests in operating the Port's facilities that are separate and apart from VPA's interests.

The second factor addresses whether joinder "as a practical matter [would] impair or impede the person's ability to protect the interest," and whether it would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii). It is unclear how the Court could grant the relief the ILA requests without prejudicing VIT. An adverse judgment rendered in VIT's absence would amount to a finding that it breached the Master Contract without it being part of this Court's judicial process. Given the allegations against VIT in the Complaint, not joining VIT here could also lead to parallel or subsequent litigation, all of which could produce incomplete, inconsistent, and inefficient settlement of this dispute.

The Court has many grounds to dismiss this lawsuit with prejudice and should do so on the face of the Complaint. But if any form of this litigation is to proceed, VIT is clearly an indispensable party and the case should be dismissed unless and until they are added as a party.

## **CONCLUSION**

At every turn, the ILA fails to provide a basis for why it is entitled to bring a claim for an advisory opinion of this Court. The Court lacks subject matter jurisdiction to hear the case, no claim has been stated, and a necessary party is conveniently absent from the pleadings. Defendants respectfully request this Court enter an order dismissing the Complaint with prejudice and provide for any other such further relief as may be required by justice.

Dated: September 18, 2025

Respectfully submitted,

VIRGINIA PORT AUTHORITY
STEPHEN EDWARDS

/s/ Jennifer L. Eaton
Jennifer L. Eaton (VSB No. 87491)
W. Thomas Chappell (VSB No. 87389)
Katherine M. Lennon Ellis (VSB No. 92358)
WOODS ROGERS VANDEVENTER BLACK PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
jennifer.eaton@woodsrogers.com
thomas.chappell@woodsrogers.com
kate.lennon@woodsrogers.com
*Counsel for Defendants*

25