IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION,

    Plaintiff,

v.                                                  Civil Action No.: 2:25cv523-JKW-RJK

VIRGINIA PORT AUTHORITY, *et al.,*

    Defendants.

## REPLY IN SUPPORT OF MOTION TO DISMISS

Nothing in the ILA's Opposition Brief overcomes the deficiencies in the Complaint. Instead of amending its Complaint, the ILA doubles down on its insufficient allegations, which do not state a claim for actionable relief. Having foregone their opportunity to amend as of right, it appears that the ILA cannot present a meritorious dispute. If the ILA was to share the actual timeline surrounding the purchase of the RMG cranes, it would reveal that the purchase took place in 2023 under a prior Master Contract and with the knowledge of the ILA. If the ILA wanted to show that VIT was in breach of the Master Contract, then it would not shy away from producing the full Master Contract and it would take the initiative to add the necessary party that it claims is in breach. The ILA's selective silence is telling. The allegations in the Complaint do not state a claim that is plausible on its face nor one for which the ILA could seek relief against Defendants. The Complaint should be dismissed with prejudice.

### ARGUMENT

The ILA asserts that Defendants focus on "fallback arguments" and "ignor[e] the substance of the ILA's actual allegations" (Dkt. No. 18, at 1, 4), when its own factual arguments gloss over

1

the substance of the legal arguments warranting dismissal of its Complaint. The ILA attempts to use strong language, instead of substance, to deflect from its failure to state a claim for preemption and its lack of standing to bring forth its Complaint. Those defects are enough to warrant dismissal, in addition to Defendants' sovereign immunity, which can be established at this stage. The ILA's decision not to amend its Complaint to attempt to correct deficiencies further demonstrates the futility of such an exercise. Accordingly, dismissal with prejudice is appropriate.

## I.  The ILA does not state a preemption claim.

The ILA's Opposition Brief fails to explain how their Complaint states a claim for preemption. The ILA states that *Garmon* and *Machinists* preemption apply to the facts pled but fails to cite cases supporting such an application under similar facts. Specifically, the ILA fails to identify how *Garmon* preemption—which is intended to provide the National Labor Relations Board (the "NLRB") with the power to enforce the NLRA, rather than the federal courts—applies to the facts as pled. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 n.26 (1985). On the issue of *Machinists* preemption, the ILA cites numerous cases regarding alleged actions occurring during the collective bargaining process—not alleged conduct in the ordinary course following implementation of the collective bargaining agreement. (*See* Dkt. No. 18, at 21–22.) Neither argument is persuasive.

The ILA misunderstands *Garmon* preemption. *Garmon* preemption concerns a state's ability to hear disputes and set substantive requirements covered by the NLRA, both of which are tasks reserved for the NLRB. *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 225 (1993) (hereinafter, *Boston Harbor*); *see also San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244 (1959). *Garmon* preemption does not, however, create a cause of action for preemption against a state actor as has been alleged in this

case, especially when no actual inconsistency with an NLRA provision has been alleged.

The ILA's arguments regarding *Machinists* preemption are equally flawed. *Machinists* preemption forbids the government from regulating conduct which Congress intended "to be controlled by the free play of economic forces." *Smithfield Foods, Inc. v. United Food & Comm. Workers Int'l Union*, 585 F. Supp. 2d 789 (E.D. Va. 2008) (quoting *Machinists v. Wis. Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976)). Accordingly, the Supreme Court has characterized *Machinists* pre-emption as "creat[ing] a zone free from all regulations, whether state or federal." *Chamber of Com. of the U.S. v. Brown*, 554 U.S. 60, 74 (2008) (alteration in original) (quoting *Boston Harbor*, 507 U.S. at 226). The rationale for such preemption is to protect the free use of economic weapons during the course of negotiations. *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 617 (1986). The VPA's ability to purchase equipment for the Port is not the sort of conduct that Congress intended to be unregulated so to protect free use of economic weapons during the bargaining process. *Cf. id.* at 615–16 (finding a city's actions in conditioning a franchise on a settlement of a labor dispute by a certain date preempted under *Machinists* preemption because it intruded on the collective bargaining process). This case does not involve allegations of state regulation that prevented the free use of economic forces during the collective bargaining process, and therefore the ILA's citation to cases regarding government regulation during the collective bargaining process is inapplicable.

"Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Boston Harbor*, 507 U.S. at 224 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Mere unhappiness of the ILA with alleged actions by the VPA does not create a preemption claim. "A State does not regulate . . . simply by acting within [a] protected area[]." *Id.* at 227. The ILA's preemption claim (Count I of the Complaint) therefore fails.

3

## II. The ILA does not state a claim for injunctive relief.

The ILA's argument that a claim for an injunction cannot be dismissed on a Rule 12(b)(6) Motion to Dismiss is not supported by federal case law. (*See* Dkt. No. 18, at 8.) Courts specifically require that a plaintiff "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). It is in accordance with this decades-old precedent that the ILA's Complaint may be challenged, pursuant to Rule 12(b)(6), due to a plaintiff failing to plead its grounds for entitlement to injunctive relief. *See Saphilom v. NewRez, LLC*, No. 3:24-cv-00008, 2024 WL 3394784, at *2 (W.D. Va. June 28, 2024). Accordingly, although the ILA is correct that an injunction is not a separate cause of action, such contention does not excuse the ILA of pleading the required elements for an injunction. Specifically, "a plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Complaint does not allege facts to support a claim of irreparable injury and no ongoing violation has been alleged with any specificity. The ILA fails to assert with particularity that it has been harmed in an irreparable way. In fact, the single reference to harm in the Complaint is the conclusory statement that "Plaintiff ILA will be immediately and irreparably harmed without the entry of a permanent injunction." (Dkt. No. 1 ¶ 56.) This statement is, at best, the sort of conclusory language and formulaic recitation of an element—in this instance irreparable harm—that has been

routinely held insufficient to state a claim. *See Twombly*, 550 U.S. at 555.

As for showing an ongoing violation, the Complaint is silent as to what other alleged equipment is being purchased in violation of the terms of the Master Contract. All that is alleged about future conduct is purported "ongoing interference with [the ILA's] collective bargaining rights" (Dkt. No. 18, at 14) even though the ILA concedes that any claimed ongoing violation is based off of "past behavior" which allegedly shows that "it is likely that Defendants' conduct will continue." (Dkt. No. 18, at 16.) Potential future harm is not sufficient to establish a claim for injunctive relief. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 740 (E.D. Va. 2014) ("Although the Court does not question the *potential* for irreparable harm on the instant facts, it is improper for the Court to award the extraordinary equitable remedy of a permanent injunction based on speculation as to the possibility of irreparable injury.").

The ILA fails to plead a claim for injunctive relief. Seemingly recognizing this flaw, the ILA argues that it is excused from pleading the requirements for the claimed injunctive relief because injunction is a remedy rather than an independent cause of action. In doing so, however, the ILA fails to cite cases that excuse a request for injunctive relief from the Rule 12(b)(6) analysis altogether. The fact stands that the ILA was required to plead its entitlement to injunctive relief. *See Twombly*, 550 U.S. at 555. The claim for an injunction should therefore be dismissed.

### III. The ILA has not established subject matter jurisdiction for either count in the Complaint.

According to the ILA, any breach of the Master Contract by the contracting party, VIT, is "irrelevant" to this case. (Dkt. No. 18, at 6.) This supposed "irrelevan[ce]" is curious when in the next breath the ILA alleges that VIT did not act "in accordance with its contractual obligations" by failing to provide the ILA with notice of the crane purchase. (*Id.*) But the ILA provides no authority to shed light on how an actual controversy can exist with Defendants when there is an unresolved

dispute with VIT, and VIT is not even a party to this action. At least at this juncture, this dispute remains one between the ILA and VIT.

Even if this Court were to ignore VIT's alleged breach, the timing of the crane purchase is critical to there being an actual controversy. Indeed, the ILA's whole case is tethered to the allegation that the VPA purchased cranes *after* the Master Contract was effective. (*See* Dkt. No. 1.) Specifically, the ILA claims the offending RMG cranes were newly purchased in April 2025 (one month after entry of the Master Contract), but no exact date is given. (Dkt. No. 1 ¶ 39.) Based on this allegation, the ILA seemingly asks the Court to infer that the cranes must have been bought *after* the Master Contract was signed (and without sufficient notice to the ILA). Not only does this defy belief, but it is untrue. It would not be a reasonable inference for this Court to conclude that multi-million-dollar port equipment could be purchased, manufactured, and delivered in a month's time. "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)). The ILA has not sufficiently presented a concrete dispute that could result in any sort of relief—nor could it. The cranes at issue were purchased in 2023 and therefore—by the ILA's own allegations—not subject to the Master Contract. (**Exhibit 1** (Publicly Available Board Resolution and Minutes)[1]); *Virginia Port Authority (VPA) Board of Commissioners Regular Meeting – Session – 413*, PORT OF VIRGINIA (last visited Oct. 8, 2025), https://www.portofvirginia.com/wp-content/uploads/2023/09/05.09.23-Regular-Meeting-

---

[1] On a Rule 12(b)(1) motion, the Court is permitted to look at extrinsic evidence to determine whether subject matter jurisdiction exists to hear the case at all "without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 566-67 (E.D. Va. 2009).

Materials.pdf. The ILA has not established subject matter jurisdiction to present its claim to the Court because the ILA cannot establish that the cranes were purchased *after* the Master Contract was adopted.[2]

Even ignoring the timing of the crane purchase, the ILA has no valid rebuttal to the prematurity of the claim when the cranes are not even alleged to be "online" or working at the Port, nor does the ILA address this Court's discretionary ability to not hear the case. For all these reasons, the Complaint should be dismissed with prejudice.

### IV. VPA and Edwards are entitled to sovereign immunity.

#### A. Even under the "arm of the State" test, VPA is entitled to immunity.

##### 1. Although no monetary judgment against VPA is sought, immunity is still appropriate.

The fact that the ILA is not seeking a monetary judgment in this case does not foreclose sovereign immunity. (Dkt. No. 18, at 11.) Sovereign immunity does apply to claims for injunctive relief and declaratory judgment. *See S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165, 169 (4th Cir. 2001) (alteration in original) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996)) ("[T]he doctrine of sovereign immunity applies even if the suit against the state seeks no damages but only requests injunctive relief. . . . '[T]he type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity.' This is because the 'Eleventh Amendment does not exist solely in order to preven[t] federal-court judgments that must be paid out of a State's treasury, it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'"). For instance, the Virginia Department of Corrections

---

[2] Because these arguments deal with allegations that are not alleged and cannot be alleged in the Complaint, the Court may conclude that these issues overlap with a failure to state a claim under Rule 12(b)(6).

was dismissed from a declaratory judgment action brought by a former employee because the court found that the Declaratory Judgment Act does not abrogate states' sovereign immunity. *Garrett v. Clarke*, 552 F. Supp. 3d 539, 556 (E.D. Va. 2021), *rev'd on other grounds*, 74 F.4th 579 (4th Cir. 2023). This factor weighs in favor of immunity.

### 2. VPA is controlled by the Commonwealth.

VPA also satisfies the second immunity factor because it is controlled by the Commonwealth. In its Opposition Brief, Plaintiff omits the fact that the Commonwealth controls the appointment of most, if not all, of VPA's Board of Directors. Out of 14 Directors, the Governor appoints 11 (subject to confirmation by the General Assembly), and the other three are the State Treasurer, the Chief Executive Officer of the Virginia Economic Development Partnership, and the Chief Executive Officer of the Virginia International Trade Corporation. VA. CODE ANN. § 62.1-129(A). The Virginia Economic Development Partnership, in turn, is a "political subdivision of the Commonwealth" whose Chief Executive Officer is appointed by its Board of Directors, and whose Board of Directors similarly consists mostly of executive officers of the Commonwealth and members appointed by the Governor and legislators. *See id.* § 2.2-2235.1(A), (H). Likewise, the Virginia International Trade Corporation "is established in the executive branch of state government," and all of its members are executive officers (or their designees) or appointed by the Governor. *See id.* § 2.2-2738(A)-(B). The Commonwealth thus has near-complete, if not total, control over the VPA's Board of Supervisors—and therefore, the VPA. *Cf. Love v. Virginia Port Authority*, No. 2:16cv160, 2017 WL 10181010, at *6-7 (E.D. Va. Aug. 11, 2017) (failing to consider the Commonwealth's role in the appointment of VPA's Board of Directors when determining that the second factor of the arm of the state test was factually inconclusive). This factor also weighs in favor of immunity.

*3. VPA is involved with state concerns, not non-state concerns.*

This Court has already found that the state concerns factor "weigh[s] in favor of a finding that the VPA is an arm of the State," entitling it to sovereign immunity. *Id.* at *5. The ILA's argument that the VPA and the Port have a global reach (Dkt. No. 18 at 13) does not diminish the focus and compelling impact the VPA and Port have on state concerns, including the handling of millions of TEUs of cargo *in* the Commonwealth of Virginia each year. The VPA certainly has statewide reach in its authority, mission, and actions. VA. CODE ANN. § 62.1-132.3. This factor favors immunity.

*4. VPA is treated like an arm of the Commonwealth under Virginia law.*

Like the previous factor, this Court has already found that VPA is treated like an arm of the Commonwealth under Virginia law, supporting a finding that VPA is entitled to sovereign immunity. *Id.* The ILA has presented no argument in opposition. This factor favors immunity.

B. <u>As for Edwards, the Opposition Brief attempts to stretch the reality of what was actually alleged in the Complaint.</u>

Seemingly acknowledging the deficiencies in the Complaint, the Opposition Brief makes new allegations about Edwards's purported conduct, including that Edwards somehow "controls everything that happens at VPA and VIT." (Dkt. No. 18, at 15.) The ILA cannot add new allegations to its brief that are outside the four corners of its Complaint. *See Duffey v. State of Maryland & Howard County*, No. PWG-15-1899, 2016 WL 4507921, at *5 (D. Md. Aug. 29, 2016) (internal citation and quotation marks omitted) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). Further, the ILA's attachment of Edwards's speaker biography for a logistics conference is not only inapposite, but irrelevant in showing the contours of his actual job responsibilities.

To survive the motion to dismiss, the ILA would have needed to allege in its Complaint

specific conduct on behalf of Edwards alone (not the collective Defendants) that would survive an *Ex parte Young* analysis. To satisfy the *Ex parte Young* exception, a court must determine "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)) (holding that the *Ex parte Young* exception was properly pled where suit was brought against two individuals in their official capacity for particularized conduct against each defendant, not conduct alleged by the defendants and their affiliated agency collectively). No such allegations exist here against Edwards specifically, and the Complaint should be dismissed.

### V.     Should the litigation proceed, VIT is a necessary party.

The ILA uses its Opposition Brief as an outlet to air new grievances against VIT, making it even more clear that VIT is a necessary party to this action. For instance, the ILA alleges that "[o]bviously . . . VIT agreed to rules that it knew VPA would help subvert" and "VIT was not bargaining in good faith" and "VIT was able to settle the strike . . . under false pretenses." (Dkt. No. 18, at 19.) These accusations are not only bold, but new, as they are not included in the Complaint. Even if the ILA amends its Complaint to include those new allegations, they reveal that this Court cannot and should not resolve those factual issues and conclude that VIT did not bargain in good faith without VIT as a party. Not including VIT would run afoul of the Rule 19 factors, which the ILA does not address in its brief. If the ILA wants to make VIT's actions the focal point of this suit, then it should bring the party subject to its claims into this litigation if the case is to proceed past the motion to dismiss stage.

### CONCLUSION

WHEREFORE for the reasons stated above and in Defendants' Memorandum in Support of

its Motion to Dismiss, Defendants respectfully request this Court enter an order dismissing Plaintiff's Complaint with prejudice, and providing for any other such further relief as may be required by justice. If the Complaint is not dismissed with prejudice, then Defendants request that this Court order that VIT be added as a necessary party to this lawsuit.

Dated: October 8, 2025

        VIRGINIA PORT AUTHORITY
        STEPHEN EDWARDS

        */s/ Jennifer L. Eaton*
        Jennifer L. Eaton (VSB No. 87491)
        W. Thomas Chappell (VSB No. 87389)
        Katherine M. Lennon Ellis (VSB No. 92358)
        WOODS ROGERS VANDEVENTER BLACK PLC
        101 W. Main Street, Suite 500
        Norfolk, VA 23510
        Telephone: (757) 446-8600
        Facsimile: (757) 446-8670
        jennifer.eaton@woodsrogers.com
        thomas.chappell@woodsrogers.com
        kate.lennon@woodsrogers.com
        *Counsel for Defendants*