IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,<br><br>v.<br><br>VIRGINIA PORT AUTHORITY, *et al.*,<br><br>Defendants. | Case No. 2:25-cv-523 |

**OPINION & ORDER**

Virginia Port Authority ("VPA") and Stephen Edwards, in his official capacity as CEO and Executive Director of the VPA,[1] move to dismiss the complaint filed by International Longshoremen's Association ("ILA"). ECF Nos. 13 (motion), 14 (memorandum). The motion seeks dismissal pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure.

For the reasons stated herein, the motion will be **GRANTED**, and the complaint will be **DISMISSED WITHOUT PREJUDICE**.

**I.   BACKGROUND**

At this stage, the Court assumes that the facts alleged in the complaint are true. VPA, a statutorily created public instrumentality of the Commonwealth of Virginia, is using its Virginia-proscribed authority to interfere with a "private-sector

---

[1] During a status conference on January 29, 2026, the parties advised the Court that Edwards has departed his role as CEO and Executive Director and is no longer employed by VPA. ECF No. 32.

collective bargaining relationship" through a separate, independent legal entity known as Virginia International Terminals, LLC ("VIT"), whose sole member is VPA. ECF No. 1 ¶¶ 2, 9, 42. VPA created VIT "specifically to administer the daily operations of the marine terminals at the Port of Virginia," which are owned by VPA. *Id.* ¶ 15. And its creation was necessary to overcome Virginia law's prohibition against state agencies recognizing labor unions as bargaining agents for employees and from entering into any collective bargaining agreement with the same. *Id.* Thus, VPA established VIT because it needed a marine terminal operator that could employ members of a labor union as the majority of marine cargo is shipped to the east coast by international cargo carriers who have collective bargaining relationships with the coastwide bargaining unit that ILA represents. *Id.* ¶ 16.

VIT—not VPA—serves as the record employer for longshore and maritime workers that are members of the coastwide bargaining unit ILA represents. ECF No. 1 ¶ 17. VIT is also an employer-member of a multi-employer management group, United States Maritime Alliance Ltd. ("USMX"), which acts on behalf of employers to negotiate and administer the coastwide collective bargaining agreement, known as the "Master Contract." *Id.* ¶¶ 20–21. The Master Contract "governs the terms and conditions of employment for longshore workers and related crafts in the coastwide bargaining unit," and covers topics such as wages, hours, benefits, and workplace safety.[2] *Id.* ¶¶ 21–22. VIT is a signatory to the Master Contract, and it participated

---

[2] Curiously, ILA has not attached a copy of the Master Contract to its complaint.

2

in the negotiations for the current Master Contract, which was signed on March 11, 2025, and will remain in effect through September 30, 2030. *Id.* ¶¶ 23, 25–26.

Article XI, Section 1, of the Master Contract provides, in pertinent part, that:

> (a) Management in partnership with the ILA shall protect the Master Contract workforce for the term of this Master Contract while improving safety, productivity, efficiency and capacity on the terminals.
>
> . . .
>
> (c) No new technology will be implemented until the parties mutually agree to manning levels and workforce protections or upon completion of the below procedure listed in Section 4 of this Article XI.
>
> . . .
>
> (e) The parties acknowledge that prior to the purchase of any equipment, software, or hardware that is subject to this Article, the requirements of Section 4 of this Article XI must be completed.

ECF No. 1 ¶ 33. Article XI, Section 4, of the Master Contract "establishes a specific and thorough review process prior to the implementation of new technology, beginning with an employer notifying the Co-Chairmen of the New Technology Committee in writing of the employer's intentions for implementing new technology." *Id.* ¶ 35. Both the implementing employer and the local ILA union shall then negotiate before the technology is implemented. *Id.*

In April 2025, ILA members observed that newly-purchased semi-automated rail-mounted gantry ("RMG") cranes were being set up and installed by VIT at the Norfolk International Terminal, without any prior notice to ILA. ECF No. 1 ¶ 38. ILA

3

confronted VIT about the cranes, and VIT maintained that the cranes had been purchased by VPA, not VIT, and that because VPA was not a party to the Master Contract, it had no obligation to abide by the Master Contract's language. *Id.* ¶ 39.

As a result, ILA filed this lawsuit claiming that the defendants' efforts to interfere with the Master Contract are preempted by the National Labor Relations Act ("NLRA"). *See generally* ECF No. 1. ILA seeks both a declaratory judgment that the defendants' efforts to interfere with the collective bargaining process are preempted by federal labor law and a permanent injunction preventing the defendants from interfering with the Master Contract. *Id.* at 9–12. In their motion to dismiss, the defendants assert (1) that the Court lacks subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on multiple grounds, including sovereign immunity, standing, and ripeness; (2) that the complaint fails under Fed. R. Civ. P. 12(b)(6) to state a claim against the defendants; and (3) that dismissal is warranted under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary and indispensable party. ECF Nos. 13 (motion), 14 (memorandum).

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject matter jurisdiction. Such a motion can proceed in two ways: a "factual challenge," where the movant asserts that the complaint's subject matter jurisdiction allegations are untrue, or a "facial challenge," where the movant asserts that the complaint "fails to allege facts upon which subject matter jurisdiction can be based."

4

*Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation and quotation marks omitted). In a facial challenge, the "facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). In a factual challenge, the court may go beyond the allegations of the complaint and decide disputed issues of fact without converting the motion to a summary judgment proceeding. *Id.*

### B.  Article III Standing

To plead standing, a plaintiff must plausibly allege that they have "(1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (punctuation omitted); *Fed. Trade Comm'n v. Ross*, 74 F.4th 186, 192 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024).

### C.  Ripeness

Ripeness is a "justiciability doctrine [that] determines when a case . . . is fit for federal judicial review." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). The doctrine of ripeness "originate[s] from . . . Article III" of the Constitution. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (citation and quotation marks omitted). "The burden of proving ripeness falls on the party bringing suit." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted). A claim is ripe for adjudication "when the action in controversy is final and *not dependent on future uncertainties*." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (emphasis

added, citation and quotation marks omitted). A claim is not ripe when "the plaintiff has not yet suffered injury and any future impact remains wholly speculative," or when "an injury is contingent upon a decision to be made by a third party that has not yet acted." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and quotation marks omitted). When assessing ripeness, courts must consider the "hardship to the parties" and "the cost" of "delaying judicial review." *Miller*, 462 F.3d at 319 (citation and quotation marks omitted).

### D. Declaratory Judgment Actions

The Declaratory Judgment Act ("DJA") provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The "declaration shall have the force and effect of a final judgment." *Id.* District courts must conduct two inquiries when deciding whether jurisdiction pursuant to the DJA exists: a constitutional inquiry and a prudential inquiry. *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990). First, "the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution—the 'constitutional' inquiry. *Id.* Second, "the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the 'prudential' inquiry." *Id.*

## III. ANALYSIS

As summarized above, ILA asserts that the defendants' efforts to interfere with ILA's collective bargaining rights, "in a manner that forces VIT to violate its obligations under the Master Contract," are a violation of the NLRA. ECF No. 1 ¶ 51.

6

The defendants argue that the Court lacks subject matter jurisdiction to hear ILA's claims because: (1) the defendants are entitled to sovereign immunity, (2) ILA lacks standing to bring suit, (3) ILA's claims are not ripe, and (4) ILA fails to allege an actual controversy between the parties. *See* ECF No. 14 at 5–15. The Court will first address the issue of standing before proceeding to the other jurisdictional arguments.[3]

### A. Standing

The defendants argue that ILA lacks standing for failing to allege any particularized harm.[4] ECF No. 14 at 12–13. The defendants contend that ILA has not stated the nature of any supposed harm it suffered anywhere in the complaint, and that in "the absence of an alleged injury, there is no standing to bring a claim." *Id.*

---

[3] Although the issue of sovereign immunity, and specifically whether ILA's claims against the defendants are barred by the doctrine, has been extensively briefed by the parties, the Court does not find it necessary to address this issue at length here because dismissal is warranted on other grounds. The sovereign immunity determination turns primarily on the Court considering four factors to assess whether VPA functions as "an arm of the state." *See United States ex rel Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, 650–51 (4th Cir. 2015) (requiring that courts consider four factors, including analyzing who would pay any potential judgment and the degree of autonomy exercised by the entity, prior to determining whether a state-created entity functions as an arm of the state, thus entitling the entity to sovereign immunity protection). And here, even if the Court had performed a more fulsome sovereign immunity analysis, it would conclude that further factual discovery is necessary to analyze the four factors, especially in evaluating whether the Commonwealth would be responsible for any judgment against the defendants and the degree of autonomy VPA exercised. In other words, at this stage of the case, the Court lacks sufficient information to determine whether VPA operates independently from, or as an arm of, the Commonwealth, and therefore declines to issue a ruling on whether sovereign immunity bars ILA's claims.

[4] Although the defendants first claim that ILA has failed to present an actual controversy against the defendants, the Court will address that argument later in the context of analyzing jurisdiction under the Declaratory Judgment Act.

ILA counters that it has pleaded that the defendants are "deliberately thwarting the ILA's federally protected right (under Section 7 of the NLRA) to engage in collective bargaining without state interference, as well as its rights under the Master Contract," and that the defendants "purchased equipment so that VIT could evade its contractual obligation to notify the ILA before purchasing such equipment." ECF No. 18 at 6 (emphasis removed).

### i.  *Injury-in-Fact*

"To establish injury in fact, a plaintiff must show that [they] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270 (citation omitted). Further, although "it is true 'that threatened rather than actual injury can satisfy Article III standing requirements,' not all threatened injuries constitute an injury-in-fact." *Id.* at 271 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000)). Instead, an injury-in-fact "must be concrete in both a qualitative and temporal sense," and the injury alleged must be both "distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations and quotation marks omitted).

The Court finds that ILA has met its burden to allege that it has suffered an injury-in-fact. ILA avers that in April 2025, RMG cranes were being installed at Norfolk International Terminal, without any prior notice to the ILA. ECF No. 1 ¶ 38. ILA further claims that this action violated the terms of the Master Contract, which requires that VIT notify the ILA local unions prior to the purchase of any new

8

technology, to allow for negotiations related to the prospective new technology. *Id.* ¶¶ 33, 35, 37. Taking ILA's allegations as true, as the Court is required to do on a facial challenge raised under Fed. R. Civ. P. 12(b)(1),[5] ILA has done enough to establish an injury-in-fact. *Beck*, 848 F.3d at 270 (providing that to establish an injury-in-fact, the plaintiff need only show that it has suffered an invasion of a legally-protected interest). Here, ILA appears to have demonstrated that the defendants purchase of RMG cranes, without prior notice to ILA, violated the terms of the Master Contract, a legally enforceable agreement. That is sufficient to show an injury-in-fact.

---

[5] In their reply brief, the defendants attach minutes from a VPA Board of Commissioners meeting for the purpose of contradicting ILA's allegation that the RMG cranes at issue were purchased in April 2025. ECF No. 19 at 6. The defendants argue that because the RMG cranes were in fact purchased prior to the implementation of the Master Contract, there is no injury-in-fact, and therefore no subject matter jurisdiction. *Id.* The defendants contend that the Court may consider this extrinsic evidence on a Fed. R. Civ. P. 12(b)(1) motion to determine whether subject matter jurisdiction exists. *Id.* at 6 n.1 (citing *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). While courts are permitted to consider extrinsic evidence on a Fed. R. Civ. P. 12(b)(1) factual challenge, consideration of extrinsic evidence outside the pleadings is improper on a facial challenge. *Kerns*, 585 F.3d at 192 ("When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'") (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Here, the defendants do not assert a factual challenge arguing "that the jurisdictional allegations of the complaint are not true," *Kerns*, 585 F.3d at 192 (cleaned up), but instead assert a facial challenge, arguing that "looking at the plain allegations in the [c]omplaint, this Court lacks subject matter jurisdiction to hear this case." ECF No. 14 at 10. Accordingly, the Court declines to consider the extrinsic evidence the defendants presented and accepts ILA's allegations as true for the purpose of addressing defendants facial challenge to subject matter jurisdiction.

9

### ii.  *Redressability*[6]

"The thrust of standing doctrine is not just that a plaintiff needs an injury to get into court. It is also that a plaintiff must 'justify exercise of the court's remedial powers on their behalf.'" *Wells v. Johnson*, 150 F.4th 289, 298–99 (4th Cir. 2025) (quoting *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017)). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).

"In general, plaintiffs ask courts to redress two broad types of injuries." *Wells*, 150 F.4th at 299. First, a plaintiff can allege that they were wronged in the past and ask the court to provide a remedy for this previous wrong to make them whole. *Id.* "[T]o redress an injury that has already happened, the plaintiff can get only backward-looking relief, like damages." *Id.* at 300. Second, "a plaintiff can complain that something might befall him in the future, or might be happening right now." *Id.* at 299. In such instances, "[w]hen an injury has yet to occur, but a plaintiff offers good reason to think it will soon (or is occurring, and a plaintiff offers good reason to

---

[6] Although the defendants do not raise the specific issue of redressability in their briefing, their injury-in-fact related argument relies in part on the notion that ILA has not established entitlement to seek forward-looking relief because they have not shown an ongoing or future injury in fact. *See* ECF No. 14 at 12–13. Further, "a federal court must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005); *see Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (courts must assure themselves of subject matter jurisdiction "and may address standing sua sponte"). Therefore, the Court concludes that it must address the redressability component of Article III standing in order to satisfy itself that subject-matter jurisdiction exists here.

think it will continue) he can seek redress prospectively through an injunction." *Id.* at 300.

Still plaintiffs can also seek redress through the issuance of a declaratory judgment. "Unlike damages, which requires the defendant to give the plaintiff money, or an injunction, which requires the defendant to take or forbear from some action, a declaration does not issue a command to the parties and does not threaten an instantaneous sanction." *Wells*, 150 F.4th at 300 (citation and quotation marks omitted). Declaratory judgments "give plaintiffs facing future injuries a remedial option other than injunctions," and allow courts to "conclusively declare the pre-existing rights of the litigants without the appendage of an equitable remedy and the constraints that come with it." *Id.* (cleaned up).

"[A]lthough the [DJA] created a useful alternative to injunctions, . . . a declaration is not a get-out-of-standing-free card." *Wells,* 150 F.4th at 301 (citation and quotation marks omitted). Declaratory judgment actions must still satisfy Article III's case or controversy requirement. *California v. Texas*, 593 U.S. 659, 672 (2021). "To satisfy this requirement—at least as for redressability—a declaratory judgment must affect the rights of litigants in the case," otherwise a "*declaratory judgment* is just another way of saying *advisory opinion*." Wells, 150 F.4th at 301 (citation and quotation marks omitted). Therefore, in order for declaratory judgments to provide redress in satisfaction of Article III's standing requirement, "a plaintiff must show both that future litigation is likely to happen (at least absent the declaration sought)

11

and that the declaration's preclusive effect will likely help [them] in that litigation." *Id.* at 302.

In this case, ILA asks the Court for two forms of relief: (1) a declaratory judgment that the defendants' attempt to interfere with the collective bargaining process between VIT and ILA is preempted by the NLRA; and (2) an injunction enjoining the defendants from any interference with collective bargaining or the administration of the Master Contract, including specifically causing VIT to violate the new technology and workforce protection provisions, as well as the grievance and dispute resolution provisions. ECF No. 1 at 12. ILA has not requested damages to remedy VPA's purchase of the RMG cranes without prior notice to ILA, which would be the traditional redress for an injury that has already occurred. *Wells*, 150 F.4th at 299. Instead, ILA requests declaratory and injunctive relief to remedy the wrong that ILA alleges is ongoing. ECF No. 1 at 12. The Court will begin by addressing ILA's request for declaratory relief.

          a.    *Declaratory relief*

Analyzing ILA's request for declaratory relief in the context of the legal principles above, the Court finds that the declaration sought would not provide constitutionally adequate redress because ILA has not included the proper defendant in the lawsuit. ILA asks for a judgment that the defendants' attempts to intervene with the Master Contract executed between ILA and VIT are preempted by federal labor law. But even if the Court chose to issue such a declaration, it would only bind these defendants—it would have no preclusive effect on VIT, the party with whom

12

ILA has contracted, because VIT has not been named as a party in this action.[7] *See Wells*, 150 F.4th at 304 (holding that the declaration sought would not provide constitutionally adequate redress because it would not preclude the state of North Carolina, which was not named in the lawsuit, from prosecuting the plaintiff in the future). Likewise, although a declaration against VPA and Edwards would prevent each entity from interfering with ILA's rights under the Master Contract, it would not preclude VIT from choosing to violate the Master Contract's terms based on its own judgment. *See Muskrat v. U.S.*, 219 U.S. 346, 362 (1911) ("[A] judgment [that] will not conclude private parties . . . amounts in fact to no more than an expression of opinion.").

Further, ILA has not demonstrated how it would use the declaration, either offensively or defensively, in a future lawsuit. The Fourth Circuit has explained that plaintiffs may seek declaratory judgments for two reasons. *Wells*, 150 F.4th at 302. Defensively, where the declaration would protect the plaintiff from "sufficiently definite risk of suffering penalty, liability or prosecution" in a likely future suit brought by the declaratory defendant, or offensively, where the plaintiff plans to affirmatively sue, and "offer[s] reason to think the future suit where [they] want to

---

[7] Although there are several recognized exceptions to the general rule of nonparty preclusion, the concept that a party is not bound by a judgment in a litigation in which it was not designated as a party, ILA has neither argued in its briefing, nor alleged facts in its complaint that any such exception applies to VIT, and therefore the Court will not consider any such argument here. *See Taylor v. Sturgell*, 553 U.S. 880, 892–96 (2008) (explaining the general rule of nonparty preclusion, along with recognized exceptions).

13

use the preclusion will come." *Id.* at 302–03. Here, the Court finds that ILA has not made the requisite showings.

To start, ILA has not alleged that VPA or Edwards will sue ILA, or provided reason to think such a lawsuit is imminent, such that ILA would then use the declaration as a defensive shield. Moreover, ILA has neither alleged "concrete plans" to file a lawsuit against the defendants moving forward, nor offered specifics of what wrongful conduct it believes they will engage in. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (holding that "some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that our cases require"). And although ILA may argue that the defendants past purchase of the RMG cranes, without providing required notice to ILA, demonstrates a likelihood that a similar injury will occur again, such past exposure is not enough to show that there is a current or ongoing injury that would be redressed by a declaratory judgment. *See Wells*, 150 F.4th at 304 ("To be sure, '[p]ast exposure to illegal conduct' can be 'evidence' that the illegal conduct may recur," "[b]ut standing alone, past exposure 'does not' 'show a present case or controversy.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Accordingly, the Court finds that the declaration ILA seeks would not provide redress for any present injury.

       b.  *Injunctive relief*

For the same reasons that declaratory relief would not provide ILA with redress for any future or ongoing injuries, the Court finds that an injunction similarly

would not redress any wrong done to ILA. Any injury ILA suffered by virtue of the RMG cranes installation without prior notice to ILA, has already transpired. *See Wells*, 150 F.4th at 300 (providing that "when the complained-of event has come and gone, it is too late for an injunction"). Further, ILA has not offered "good reason to think" that other new technologies will be purchased without notice to ILA. *Id.*

ILA appears to contend that the prior purchase of the RMG cranes demonstrates the "possibility that the troublesome event will recur," but ILA's pleading of one prior wrong, without more, is not enough to convince the Court that there is a good reason to think similar conduct will recur. *Wells*, 150 F.4th at 300; *see Murthy v. Missouri*, 603 U.S. 43, 59 (2024) ("If the plaintiff were seeking compensatory relief, the traceability of their past injuries would be the whole ball game. But because the plaintiffs are seeking only forward-looking relief, the past injuries are relevant only for their predictive value."). Although ILA has alleged an injury at the hands of the defendants, it has only offered the purchasing of RMG cranes as an example of their interference with the Master Contract. *See* ECF No. 1 ¶¶ 38–41. ILA has not claimed that VPA or VIT have plans to purchase more types of new technology in violation of the terms of the Master Contract, or that there is any reason to believe such conduct will transpire, aside from the fact that it allegedly happened once. Without more definite allegations, the Court finds that ILA has not met its burden to show imminent future injury, warranting injunctive relief. *See Murthy*, 603 U.S. at 59 ("[T]he past is relevant only insofar as it is a launching pad for a showing of imminent future injury.").

15

**B.     Ripeness**

The defendants also argue that ILA's claims are not ripe. ECF No. 14 at 13–14. In support of this contention, the defendants claim that the complaint is speculative and relies on the future conduct of VIT to determine whether any injury will occur. *Id.* ILA counters that whether VIT is in breach of the Master Contract is irrelevant to ILA's allegations against the defendants, and that the complaint alleges that ILA must be given notice and opportunity to bargain prior to the purchase of any new equipment. ECF No. 18 at 6–7.

### i.     *ILA's claims are not ripe.*

For reasons the Court has explained, *see supra* Parts III.A.ii.a and III.A.ii.b, ILA's claims are not ripe for judicial determination. "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe*, 713 F.3d at 758 (citation and quotation marks omitted). Although the Court has found that ILA sufficiently pleaded an injury-in-fact through its allegations regarding the purchase of the RMG cranes, the relief that ILA requests is not tethered to that injury. Instead, ILA has sought relief in anticipation that VPA will continue to interfere with VIT and ILA's contractual relationship moving forward and not relief for its prior injury. ECF No. 1 ¶¶ 44–57. Accordingly, this claim, coupled with the relief sought, is not ripe until the defendants take further action that

interferes with the contractual relationship, or at least until ILA can plead facts to show future injury is not "wholly speculative."

Moreover, any future injury to ILA is contingent not only on VPA's conduct, but also on the conduct, or lack thereof, of VIT. ILA's claims are rooted in the fact that VPA is "causing VIT to violate [the Master Contract]." ECF No. 1 ¶ 48. Any future injury to ILA is therefore dependent first on VPA acting in a manner that interferes with VIT and ILA's relationship under the Master Contract, and second on whether VIT in fact breaches the Master Contract. *See Doe*, 713 F.3d at 758 ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court."). Further, the Court is skeptical of the argument that any future injury to ILA would be completely independent of actions VIT takes. For instance, if VPA were to inform VIT that it intends to purchase a new piece of equipment, VIT could theoretically cure any potential injury to ILA by notifying ILA of this intention and engaging in negotiations prior to purchase. *See Wild Virginia v. Council on Environmental Quality*, 56 F.4th 281, 295 (4th Cir. 2022) (providing that although ripeness can rest on an "anticipated future injury," "the future injury cannot be wholly speculative or rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (cleaned up). But if VIT chose not to cure the injury, then its inaction would constitute a breach of the contract by the entity that is actually a party to the contract. Either way, the claims are "dependent on future uncertainties" and the Court concludes that

they are not ripe for decision.[8] *In re Naranjo*, 768 F.3d at 347 (citation and quotation marks omitted).

### ii. *Delay in judicial review will not cause undue hardship.*

When assessing ripeness, the Court must balance the matter's fitness for judicial review against the "hardship to the parties" and "the cost" of "delaying judicial review." *Miller*, 462 F.3d at 319 (quotation marks and citations omitted). The defendants assert that ILA will not be harmed because the RMG cranes are not alleged to be currently in use. ECF No. 14 at 14. ILA has not presented any argument to suggest that dismissal would cause it significant hardship. The Court therefore finds that ILA would not suffer undue hardship upon dismissal of this action.

Further, there is no allegation that ILA is otherwise being harmed each day that it is not granted the declaratory and injunctive relief it has sought. *See* Miller, 462 F.3d at 321 (holding that an undue hardship is presented when a plaintiff's injuries become worse each day decision is delayed). Because there is no "immedia[te] . . . threat" of harm, this factor weighs against a finding that ILA's claims are ripe. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992) (citation omitted).

---

[8] Although ILA alleges that VPA created VIT for the purpose of circumventing Virginia law's prohibition against state agencies recognizing labor unions as bargaining entities for employees, ILA has not brought any claims against either VPA or VIT related to this assertion. Instead, ILA asks only for a declaratory judgment and injunction based on claims that are neither redressable nor ripe at this stage. Therefore, in the absence of any such claims or assertions that VIT is a shell entity for VPA, the Court does not find it prudent to engage further on this point.

### C. The Court Declines to Exercise Jurisdiction Under the Declaratory Judgment Act.

The defendants also contend that no actual controversy exists between ILA and the defendants, and that no alleged dispute is sufficiently concrete for the Court to issue a declaratory judgment. ECF No. 14 at 10–12. As previously explained, "for a district court to have jurisdiction to issue a declaratory judgment," "the dispute must be a case or controversy within the confines of Article III . . . [and] the trial court, in its discretion, must be satisfied that declaratory relief is appropriate." *White*, 913 F.2d at 167 (quotation marks omitted).

Although the Court finds that ILA has done enough to assert that a controversy exists between the parties, the Court concludes that granting declaratory relief would be inappropriate and therefore declines to exercise its discretion to hear this case. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfied subject matter jurisdiction prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Therefore, even if the Court's conclusion were incorrect, and this action were justiciable under Article III, the Court nonetheless declines to exercise its discretion under the DJA, because "courts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction, as this case does." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019). Thus, the Court finds it prudent to decline to exercise its discretion under the DJA to entertain this action.

IV.	**CONCLUSION**

For these reasons, the motion to dismiss (ECF No. 13) filed by Defendants Virginia Port Authority and Stephen Edwards, in his official capacity, is **GRANTED**.

Plaintiff International Longshoremen's Association's complaint is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
February 26, 2026